**OKAW DRAINAGE DISTRICT, Plaintiff,**

v.

**NATIONAL DISTILLERS AND CHEMICAL CORP., Defendant.**

**No. 84–3445.**

United States District Court, C.D. Illinois, Springfield Division.

Feb. 8, 1994.

Brian L. McPheters, Champaign, IL, for plaintiff.

James F. Lemna, Champaign, IL and Harlan Heller, Mattoon, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge:

This cause (Okaw IV) is on remand from the Court of Appeals for reassignment to another judge. However, before transferring the case for reassignment, and for the purpose of assisting the judge who will receive the case, a summary of the background of the case will be helpful.

This is the fourth time that this case has been before this Court. Plaintiff drainage district asserts a breach of contract claim against the Defendant (referred to by the Court of Appeals as "USI") for Defendant USI's performance under a contract entered into between the parties for the maintenance of part of a drainage ditch located in Champaign County, Illinois. The contract was originally entered into in 1951, and later modified in 1965 and 1974. USI agreed to reconstruct the drainage and erosion control structures at the outlets of the tile drains of the drainage district and spray the ditches, or in the alternative, clear the ditches, in accordance with the drainage district's specifications. At least once every ten years following reconstruction of the drainage ditch, USI agreed to clean out the ditch pursuant to the drainage district's specifications.

The parties agreed that USI could clean out the drainage ditch once every ten years or on an ongoing annual basis. USI agreed to perform the repair and maintenance work of the drainage ditch by a) "annual spraying, or clearing and spraying, of the bottoms, side slopes and uncultivated berms to a distance of fifteen (15) feet outward on each side from the tops of the side slopes," and b) "cleaning out of the bottoms of the ditches comprising the joint drainage system by either continuous or spot dredging as needed, to restore ... the cross sectional shapes and gradients ... of these ditches." USI agreed that the annual spraying should "consist of the application of a solution containing a suitable and effective herbicide, in such manner as to control and restrain the growth of trees and brush and incidentally, when leaf-killing spray is applied, to discourage the growth of weeds, in the areas of application. Such spraying may be either the 'dormant' type suited for application in the winter season or of the leaf-killing type, suited for application in spring season."

USI further agreed to perform "annual clearing ... as *a deferred or directed* alternate to annual spraying" consisting "of the cutting, removing and disposing of all willows, trees, brush, logs, and other like growth and debris growing or found within the cross-sectional area of the ditches, in the manner set forth in" the drainage district's specifications. (emphasis in contract). USI's duties under the contract terminated after 1986.

The drainage district originally filed suit against USI in state court, asserting that

prior to October of 1984, USI had failed to adequately dredge the drainage ditch and clear the brush on the sides of the ditch. On November 14, 1984, USI removed the case to federal court.

On August 10, 1988 this Court began a three-day bench trial on the drainage district's claims. The drainage district never filed with the Court the list of specifications or the general provisions that were to accompany the contract. Other than the presentation of photographs of the drainage ditch taken in 1985 after the alleged breach, the only evidence introduced by the drainage district concerning USI's performance under the contract was expert opinion testimony and circumstantial evidence regarding the condition of the drainage ditch. The opinion testimony was based on observations made subsequent to the alleged breach and thus, like the photographs, was deemed not credible in support of the drainage district's claim of prior breach of contract. Basically, the record consisted of conflicting opinion testimony as to whether USI's maintenance of the ditch was "reasonable."

There was testimony that annual spot dredging of the ditch had been conducted between 1978 and 1984, and that in 1984 a complete clean-up of the drainage ditch was performed, resulting in the removal of all existing sand bars. After 1984, USI hired a different contractor to dredge the drainage ditch on an annual basis. There was testimony that when the final contractor completed his work in 1987, the drainage ditch was cleared for an open flow, with a solid bottom. It was also revealed that spraying of the banks of the ditch was not possible after the E.P.A. forbade the use of sprayed herbicides in the late 1970's. When spraying was no longer possible, USI cut the brush on the banks by hand. However, the land adjoining the drainage ditch was owned not by the drainage district, but by local farmers who did not want USI to cut brush on their land. Without an easement or the permission of the landowners, USI could not cut brush on land which the drainage district did not own. Such conduct would amount to a trespass, and any part of the contract providing therefor would be void for illegality of purpose.

*See Merchandise Nat'l Bank v. Kolber,* 50 Ill.App.3d 365, 370, 8 Ill.Dec. 450, 365 N.E.2d 688 (1977).

On August 12, 1988, at the conclusion of the presentation of evidence, the Court held that the drainage district had failed to establish by a preponderance of the evidence that it was entitled to any damages (Okaw I). No written findings were made, but the Court rendered an oral opinion explaining the basis for its ruling, finding that there was basically a conflict in the opinion testimony regarding whether USI had reasonably maintained the drainage ditch, and that due to the drainage district's failure to present specific evidence of breach of contract by USI, the Court was unable to resolve the conflicting opinion testimony in favor of the drainage district. Accordingly, judgment was entered for USI.

The drainage district then appealed this Court's decision, and the Seventh Circuit held that it could not determine from the record the facts of the case as resolved by this Court, thus necessitating remand of the case for further findings on the breach of contract claim. *Okaw Drainage Dist. v. Nat'l Distillers & Chemical Corp.,* 882 F.2d 1241, 1245 (7th Cir.1989).

Upon remand, this Court issued a written opinion clarifying all of the oral findings made at the conclusion of trial and setting forth in detail the basis for the Court's findings of fact and conclusions of law (Okaw II). *Okaw Drainage Dist. v. Nat'l Distillers & Chemical Corp.,* 739 F.Supp. 459, 461–63 (C.D.Ill.1990). Again, after reviewing the evidence, the Court found that USI had performed its duties of dredging and brush clearing under the contract and that the drainage district had failed to establish breach of contract by USI by a preponderance of the evidence. *Id.* at 464. Accordingly, judgment was entered for USI. *Id.*

The drainage district, however, filed another appeal, and in an unpublished order dated March 9, 1992, the appellate court held that the case would have to be remanded for further findings, because this Court had erroneously applied the doctrine of substantial performance to the contract, when the contract should have been examined for strict performance by USI. This, however, was an

incorrect assumption by the Court of Appeals. This Court *did* examine specific provisions of the contract for USI's performance of those provisions. However, the contract, having been twice amended, is poorly drafted and refers to further specifications which were never incorporated into the contract or presented to this Court for review.

In order to clarify this Court's earlier findings in light of the appellate court's unpublished order, this Court reexamined the contract and the evidence which had been presented by the parties and on April 2, 1993 issued specific findings regarding application of the evidence to the contract (Okaw III). This Court reiterated that the drainage district had failed to present specific evidence demonstrating that USI had committed breach of any specific contract provision. In its order, this Court indicated that the drainage district had not asserted the specifications alleged to have been breached and had presented mostly opinion testimony in support of its breach of contract claim based on *ex post* observations of the drainage ditch.

The drainage district again appealed. And the appellate court, without examining the specific findings entered by this Court, remanded the case for reassignment to another judge to "hold a new trial on the issue of damages for the defendant's breach of its brush clearing duties as well as on the issue of liability (and damages if necessary) regarding defendant's dredging duties." This was done in an unpublished order dated November 18, 1993, 9 F.3d 1549.

To help the new judge on reassignment, we point out that at the bench trial in this case, very little documentary evidence was introduced by the drainage district, and the material that was introduced was comprised of photographs of the ditch made subsequent to the time period at issue in the complaint. Given the fluid nature of a drainage ditch, observations of its condition made after the passage of time are not especially pertinent to the condition of the ditch at an earlier time. Moreover, from the opinion testimony given, it was not clear what the actual state of the drainage ditch was and in what condition the ditch should have been if the contract had been strictly adhered to, because most of the opinion testimony related to observations of the ditch after 1984. This Court thus determined that the opinion testimony was not credible in support of a claim of specific breach of the maintenance contract.

More important, however, was the omission from the pleadings of the exact specifications referred to in the contract. Without these unknown and supposedly very detailed specifications (and proof of whether the specifications were ever part of the contract), the Court could only determine that USI had agreed to dredge the drainage ditch and clear the adjoining brush pursuant to the somewhat vague and poorly worded terms of the contract that was before the Court. Even after hearing all of the various opinion testimony firsthand, this Court found that the drainage district had still failed to present sufficient evidence demonstrating by a preponderance of the proof that USI had not complied with the terms of the contract that accompanied the complaint.

Furthermore, when the case was previously remanded for further findings, both parties—upon two occasions—failed to submit clear and succinct proposed findings, as they had been instructed to do by the Court. Therefore, the Court received little adversarial guidance in resolving the facts of the case.

*Ergo,* pursuant to the mandate, this case is hereby transferred to Chief Judge Mihm for reassignment.

SO ORDERED.